UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,
                        *Plaintiff,*


v.

                                                       Case No: 20-cr-00195(JLS)

DAVID RUBEL,
                       *Defendants.*
_____


### DAVID RUBEL'S SENTENCING MEMORANDUM, STATEMENT REGARDING SENTENCING FACTORS AND LETTERS IN AID OF SENTENCING

DATED:  Buffalo, New York
           June 22, 2023                            Respectfully submitted,

                                                             /s/Herbert L. Greenman

                                                             HERBERT L. GREENMAN, ESQ.
                                                             LIPSITZ GREEN SCIME
                                                              CAMBRIA, LLP
                                                              Counsel for Defendant
                                                              DAVID RUBEL
                                                              42 Delaware Avenue
                                                              Buffalo, New York 14202
                                                              (716) 849-1333
                                                              hgreenman@lglaw.com

TO:     RAYMOND JOHN FADEL, ESQ.
           ASSISTANT UNITED STATES ATTORNEY
           138 Delaware Ave.
           Buffalo, NY 14202

## PRELIMINARY STATEMENT

On June 23, 2022 David Rubel appeared before United States District Judge John L. Sinatra, Jr., and pled guilty to the 6th count of a 13 count indictment charging him with Receipt of Child Pornography, which took place on July 20, 2020. His plea of guilty was in violation of Title 18 USC §2252(A)(a)(2). The remaining counts of the indictment will be dismissed at the time of his sentence.

## THE PLEA AGREEEMENT BETWEEN MR. RUBEL AND THE GOVERNMENT

In a written Plea Agreement entered into between Mr. Rubel and the United States Attorney's Office for the Western District of New York, the parties agreed that the sentencing Guideline range of imprisonment would be 168 to 210 months, a fine and a period of Supervised Release of 5 years up to life. The Plea Agreement also indicated that both the Government and Mr. Rubel reserved their rights to recommend a sentence outside of the Sentencing Guidelines range and to bring to the attention of the Court all information which may be relevant. The Government also reserved its rights to advocate for a specific sentence consistent with the terms of the Plea Agreement including restitution, if ordered, and to impose any application for a downward departure or a variance outside of the sentencing Guidelines range. Mr. Rubel also agreed that it was his understanding that he would have to register as a sex offender once his sentence has been completed. There were also forfeiture provisions.

## MR. RUBEL'S CRIME OF CONVICTION

The presentence report outlines Mr. Rubel's criminal activity which formed the basis for his conviction and plea of guilty. As indicated, in or about May, 2020 after a relationship Mr. Rubel had with the victim's mother, he moved into the family home. The victim was 15 years old at the time and in July, 2020 she turned 16 years of age.

In that same month, Mr. Rubel and the victim began communicating by text message which contained sexual conversations. The defendant text messaged a photograph of his exposed groin area. Mr. Rubel has agreed that he requested sexually explicit photographs from the victim who sent him photographs of her vaginal area shown in a lascivious pose. The activity took place over a few weeks.

Mr. Rubel was arrested as a result of an investigation by the United States Federal Bureau of Investigation who was advised by the Town of Tonawanda Police Department of the text messaging. The investigation began when the victim's father notified the police that he had discovered some of the text messages on the victim's phone. The police searched the victim's phone and were able to recover numerous lascivious messages between Mr. Rubel and the victim. Some of the text messages are set forth at paragraph 19 of the presentence report.

## MR. RUBEL'S ADMISSIONS

On August 11, 2020 Mr. Rubel was interviewed by Town of Tonawanda police detectives. After being advised of his constitutional rights, he waived those rights and agreed to speak with the officers. In his statement, he fully admitted to his crime of conviction and admitted that he was aware of her age at the time the criminal activity took place.

Mr. Rubel has fully accepted responsibility for his crime of conviction as set forth in the presentence report and in his letter to the Court. As he indicated "I take full responsibility for my actions. I was irresponsible. I'm truly sorry." As the presentence report also indicated, he has shown remorse for what has taken place with her and hopes that she will be able to heal from his criminal activity.

There is no indication that Mr. Rubel sexually abused or intentionally physically assaulted the victim. As will be set forth below, Mr. Rubel has struggled with drug and alcohol problems for a lengthy period of time which, we believe, was a precipitating factor for his crime of conviction. Mr. Rubel has offered no excuses for what he has done nor has he tried to minimize his behavior. As he has indicated, he was the adult in the relationship between he and the victim and he has never minimized what he has done. Simply put, he is truly sorry.

## MR. RUBEL'S BACKGROUND

After his arrest, Mr. Rubel began counseling at Endeavor Health Services. He remained in counseling on a regular basis, attending group and some one-on-one sessions. He remained in counseling for almost 2 years until his incarceration which took place at the time of his plea of guilty.

Mr. Rubel was released on bail after his arraignment before the United States Magistrate Judge. He was ordered to participate in the Location Monitoring Program and satisfactorily abide by the terms of home detention. He was released on October 25, 2020 until his incarceration in June, 2022 at the time of his plea of guilty.

As Mr. Rubel has explained to counsel, as a time for his plea of guilty came closer, he experienced tremendous anxiety, considering his acceptance of responsibility for what he had done to the victim as well as his pending incarceration. On four occasions he tested positive for controlled substances which he had ingested. When speaking with his probation officer, he admitted to the use of controlled substances because, as he advised, he was unable to "cope with stressors." Because of his noncompliance and the fact that he had pled guilty, Mr. Rubel, as he

understood would happen, was remanded to the custody of United States Marshals Service while sentencing was pending.

In the past, Mr. Rubel had struggled with mental health and controlled substance issues. He has previously been diagnosed with Attention-Deficit-Hyperactivity Disorder (ADHD) and with a bipolar disorder. He previously had been hospitalized at a local hospital after attempting suicide. As he indicated, he frequently suffered from thinking about suicide/taking his own life and became a heavy drug and alcohol user. He is currently prescribed significant antidepressant/anxiety disorder medication while currently incarcerated at local jail.

At an early age, Mr. Rubel began self-medicating from his mental health issues using numerous different types of controlled substances. He also became addicted to the use of heroin. In addition, Mr. Rubel developed a serious alcohol dependency which, we believe, was a precipitating factor in his crime of conviction. For the most part, once he was released, and upon attending drug and alcohol counseling Mr. Rubel was able to abstain from using drugs and alcohol. However, as a time became closer for him to accept responsibility and begin his incarceration, as noted above, he began to use drugs and alcohol again. For that he is sorry.

Mr. Rubel, for the most part during his adult life worked on a full-time basis. As indicated, he worked for approximately 18 years at a local landscape company and, as his employer indicated, he demonstrated "maturity and reliability over time and the company would rehire the defendant as a seasonal laborer."

During conversations counsel has had with Mr. Rubel about his background and reasons for his offense, Mr. Rubel has continuously indicated tremendous remorse for what he did. He has stated to counsel that he "victimized" her and continuously indicated that he hoped that she

5

can be continued to heal from what he has done to her. As he indicates, further, he states that "I took advantage of her and hurt her."

When asked why he did what he did, Mr. Rubel has shown substantial insight into the fact that his use of drugs and alcohol at the time allowed him to let his guard down and to deal in a way with the young victim that he never should have done. He has stated that during the time, he knew that he was violating the victim at a time when his use of drugs and alcohol was running rampant. He indicated that he was basically self-medicating his own mental health issues because he could not obtain health insurance to get the help that he needed. He states, however, that he believes that was simply an excuse why he continued to use the drugs and alcohol. As he has stated, he has been a drug addict since the age of 14. He stated, through his life, that he felt that he was not ready to quit using drugs and alcohol. However, his statement that he is a drug addict, even though he is not using drugs at the present time, is helpful to understand how he sees his future.

Mr. Rubel has stated further to counsel that by using drugs and alcohol he was covering up his own problems and self-medicating from his dependency and anxiety. As he stated, I "covered it up."

More recently, when counsel asked Mr. Rubel about how he feels about himself he stated that "I am a low down piece of garbage. I just want to understand what I did and why I did it. I know that I need help for my addiction." Since the time that he was incarcerated, Mr. Rubel indicates that for the first time in quite a while he is able to think logically in a way that he was not able to previously.

As well, Mr. Rubel has advised that he had never been involved with any type of sexual relationship with a minor previously. There is nothing in the record of the instant case to suggest that he has ever previously victimized a child. However, Mr. Rubel fully understands that he caused substantial harm to the victim.

### MR. RUBEL'S ACCEPTANCE OF RESPONSIBILITY AND CONTRITION FOR HIS CRIME OF CONVICTION

Mr. Rubel, as noted above, has fully accepted responsibility for what he did. His only hope is that the victim can continue to heal from his acts. His reaction to his crime seems to be appropriate and we are hopeful that during the time that he is incarcerated and once he is released that he can continue to understand what he needs to do. Simply put, he needs to get help for his own mental health issues.

### ANALYSIS

Mr. Rubel will have to continue to take a long road toward his own rehabilitation. While he has been incarcerated, he has been given the proper medication and does not feel the urge to use drugs or alcohol. He knows that they can never play a part his life ever again. His rehabilitation seems to be possible.

As to his crime and impending jail sentence, we understand that there are compelling reasons for incarceration. He hopes while in jail to obtain rehabilitation interventions. We are hopeful that Mr. Rubel, once released, can be a productive member of his community. We are respectfully requesting that the Court fashion a sentence which recognizes the seriousness of Mr. Rubel's offence which would provide specific and general deterrence. However, in light of all the circumstances of the commission of the crime and the fact that Mr. Rubel had never previously

sexually offended, we believe that Mr. Rubel will be on the way to more healthy thinking and full rehabilitation. We understand that any conditions which will be placed after his sentence is completed upon Mr. Rubel will have serious consequences for him. He will likely have restrictions on where he can live, work and travel and who he will be able to be around. He will be required to register as a sex offender and likely will have severe restrictions on computer an Internet use and will be ordered to comply with any and all conditions imposed by the Court and/or his probation officer in the future. *United States v. Garte*, 543 F3d 1026, 1028-29 (8th Cir., 2008) (the court may consider the lasting effects of being required to register as a sex offender).

While we fully understand the seriousness of Mr. Rubel's crime of conviction, we do note that the United States Sentencing Guideline Commission has found that the "current sentencing scheme results in overly severe Guideline ranges based on outdated and disproportionate enhancements related to their collective behavior." (*United States Sentencing Commission, Child Pornography Report* at 321.

As well, the United States Department of Justice has agreed with the Sentencing Commission's general conclusion that:

> [T]he Department agrees with the Commission's conclusion that advancement and technology of the evolution of the child pornography "market" that has led to a significantly changed landscape, one that is no longer adequately represented by the existing Sentencing Guidelines. Specifically, we agree with the Report's conclusion that the existing Specific Offense Characteristics (SOC's) and USSG §2G2.2 may not accurately reflect the seriousness of an offender's conduct and may fairly account for different degrees of offender dangerousness. The current guidelines can at times under-represent and at times over-

represent the seriousness of an offender's conduct and a danger the offender possesses.

Courts have found in cases where the USSG §2G2.2 enhancements apply that the enhancement for conduct similar to what Mr. Rubel engaged apply in over 95% of the cases. (*United States Sentencing Commission Child Pornography Report* at 2009).

In this case, Mr. Rubel has never denied his guilt. He confessed to the police immediately upon being questioned. He has shown significant remorse for his crime of conviction and will receive the help that he has needed for most of his life.

In the end, Mr. Rubel will obtain the expert type of treatment as he has more recently which will likely reduce any risk of recidivism for acts similar to his current crime of conviction. We believe that with his self-awareness of what he has done and the guilt that he feels, Mr. Rubel is an appropriate candidate for rehabilitation in the future which will reduce the likelihood of committing any future crimes. He has not physically abused a child and we believe that it is unlikely that he would ever do so in the future. We believe that he is a low risk to reoffend.

In the end, in imposing a sentence, the Court will consider the factors set forth in §3553(a) and, after considering the factors, the Court will impose a sentence that is sufficient but not greater than necessary to satisfy the purpose of sentencing, just punishment, respect for the law, deterrence, protection of the public and rehabilitation of the defendant. We understand that the Court will not presume the Guideline range as the correct one within which the defendant should be sentenced. See *Newton v. United States*, 555 US 350, 352 (2009); *Rita v. United States*, 551 US 338, 351 (2007).

Over the years, long terms of imprisonment for offenders have been strongly attacked as unsound, overly harsh and fundamentally deviating from the Guidelines' overarching policy and expertise. *United States v. Dorvee*, 616 F3d 174 (2d Cir., 2010); *United States v. Grover*, 624 F3d 592, 609 (3d Cir., 2010); *United States v. Stone*, 595 F3d 83, 97 (1st Cir., 2009); *United States v. Huyck*, 2015 WL 6142929 (D.C., Nebraska, 2015).

Mr. Rubel, while having committed a serious crime, was not involved with any file sharing or peer-to-peer arrangements with any other individuals. There is no showing in this case that he shared with any other individual the images which he possessed. He never attempted to entice a child for sex of to trade or distribute images nor did he have any hands-on attempted contacts with children. Those factors may be considered as to what sentence should be imposed.

In *United States v. Huyck*, *supra* the court found:

> The Guidelines' sentencing scheme for child pornography crimes logically skews sentences for "average" defendants to the upper end of the statutory range, regardless of the particular defendant's acceptance of responsibility, criminal history, specific conduct or degree of culpability, thus blurring distinctions between the least culpable and the worst offenders. In the context of this and other Internet child pornography crimes that involve peer-to-peer networks, the Guidelines provide little distinction between a low-level distributor and a high-level distributor and no distinction between one who merely possesses and those who "receive" as opposed to "distribute." In this Court's experience, there is essentially no Internet child pornography offender who could end up with a Guidelines recommended sentence that falls at or close to the low end of the statutory range for either a possession or receipt offense.

In *United States v. Jenkins*, 854 F3d 181 (2d Cir., 2017), the Second Circuit again paid attention to a references as to "disproportionate enhancements" under USSG §2G 2.2. The court reemphasized the prior decision in *United States v. Dorvee, supra*, and found that:

10

> "our conclusion that *Jenkins'* sentence was shockingly high as reinforced by the important advances and our understanding of production of child pornography offenses as we decided *Dorvee*. To begin with, the latest statistics on the application of sentencing enhancements confirmed that the enhancement *Jenkins* received under the Guidelines are all but inherent.
>
> The Court further recognized that the comprehensive report submitted by the United States Guideline commission explained that it "believes that a current nonproduction Guidelines warrants revision in view of its outdated and disproportionate enhancements related to offender's collecting behaviors as well as its failure to account fully for some offenders' involvement in child pornography communities in sexually dangerous behavior."

Simply put, we ask the Court to consider all of the circumstances of this case. The United States sentencing Guidelines act as a starting point for the Court in making an appropriate decision. *United States v. Dorvee, supra*. And, as stated above, the Second Circuit has rejected a *carte blanche* acceptance of the Guidelines in child pornography cases.

In *Dorvee*, the court found that:

> Consequently, adherence to the Guidelines resulted in virtually no distinction between the sentences where defendants like *Dorvee* and the most dangerous offenders who, for example, distribute child pornography for pecuniary gain and who fall into higher Criminal History Category. This result is fundamentally incompatible with §3553(a). By concentrating all offenders at or near the statutory maximum, §2G2.2 eviscerates the fundamental statutory requirements of §3553(a) that district court consider "the nature and circumstances of the offense and the history and characteristics of the defendant" in violating the principle in Gall, that courts must guard against unwarranted dissimilarities among sentences for defendants who have been found guilty of dissimilar conduct.

Of course, this Court has a broad discretion when fashioning a sentence. In this case, Mr. Rubel faces at least a 5 year mandatory minimum sentence for his conduct. The question

squarely put is what sentence is sufficient but not greater than necessary to meet all of the goals of 18 USC §3553(a).

In this case, we believe that Mr. Rubel is not a pedophile, a sexual predator or child abuser. While his conduct of course cannot be tolerated, we believe that he presents a lower risk of reoffending which we ask the Court to consider when imposing an appropriate sentence. We truly believe that with the proper guidance and counseling Mr. Rubel will not pose a threat to children or anyone else in the community. Once he has stopped using drugs and alcohol and has committed to his mental health needs, we believe that Mr. Rubel can conform to the norms of society.

Here, Mr. Rubel has fully accepted responsibility and likely will be accepted into the Bureau of Prison Sex Offense Program once his sentence reaches approximately 18 months remaining and he will continue in mental health and sex offender treatment once he is released from prison. As well, a significant period of supervised release and requirement that he register as a sex offender may impact any sentence the Court will impose. *United States v. Autry*, 555 F3d 864, 875-76 (9th Cir., 2009) (a defendant's sentence includes a registration as a sex offender, travel restrictions, Internet restrictions, therapy requirements, computer restrictions and other negative consequences).

We believe that eventually Mr. Rubel will be released from prison as a much better person than he has been in the past. Drugs and alcohol can no longer be a part of his life and, once that fully takes place, it is unlikely that he will be a danger to anyone or the community. We understand firsthand the sorrow and empathy he has shown for the child whose trust he violated. In part, his decision to plead guilty was to avoid any more suffering by the child.

**LETTERS IN AID OF SENTENCING**

Attached hereto are a number of letters which we have received on Mr. Rubel's behalf. We ask the Court to consider the letters in light in which they are intended.

**CONCLUSION**

Mr. Rubel knows, more than anyone else, that his actions were egregious. He also understands that they cannot be condoned. He has fully accepted responsibility. He understands that he will need to work at his rehabilitation while incarcerated and once he is released. We ask the Court to consider all of the factors and ask that Mr. Rubel not only be defined by the crime he has committed. Perhaps the greatest part of the sentence is the fact that he understands that his acts were disgusting, criminal and wrong.

By this memorandum we are not attempting in any way to minimize the seriousness of Mr. Rubel's crime of conviction. We understand as he does that his crime can ever be condoned. The most important thing in Mr. Rubel's life is that the child victim be able to continue to heal. Of course, a sentence to be imposed in a case such as this is never easy.

Mr. Rubel has done everything in his power to acknowledge his guilt and wrongdoing. He has hurt the child as well as his own family by letting everyone down.

Perhaps we can see that in some ways Mr. Rubel's acts were caused by his own demons. We hope that the Court will consider all of the above in fashioning a just and reasonable sentence.

DATED: June 22, 2023
         Buffalo, New York

                                          Respectfully submitted,

/s/Herbert L. Greenman

---

HERBERT L. GREENMAN, ESQ.
LIPSITZ GREEN SCIME CAMBRIA, LLP
42 Delaware Avenue, Suite 300
Buffalo, NY 14202
Phone (716) 849-1333
Fax (716) 855-1580
hgreenman@lglaw.com